THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SHARN CHAPMAN, *et al.*
On behalf of himself and others
similarly situated.

                           *

    Plaintiffs,

                           *

    vs.                       Civil Action No. AW-08-2545

                           *

OURISMAN CHEVROLET CO., INC.,
*et al.*                           *

    Defendants.

\*\*\*\*\*\*

## MEMORANDUM OPINION

Pending before the Court is Defendant Ourisman Chevrolet Company, Inc., Abbas Khademi, and Chris Ourisman's Motion for Summary Judgment. (Doc. No. 90). Also pending before the Court is Plaintiff Sharn Chapman's Cross Motion for Partial Summary Judgment. (Doc. No. 98). Additionally, Plaintiff has filed a Motion for Leave to File a Third Amended Complaint (Doc. No. 65) and a Motion for Sanctions (Doc. Nos. 97 and 103). Finally, Plaintiff has filed a Motion for Attorney's Fees and Costs (Doc. No. 108). On June 20, 2011, the Court held a motions hearing on the pending motions in this matter. The Court will address each of the pending motions herein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant case was filed on September 9, 2008 (Doc. No. 10), alleging violations of the Fair Labor Standards Act ("FLSA").[1] On November 13, 2008, Plaintiffs filed a Motion to Conditionally Certify a FLSA Collective Action. (Doc. No. 12). On April 14, 2009, the Court granted Plaintiffs' Motion to Conditionally Certify the Class, to Amend their Complaint, and to

---

[1] Patricia Merrick, Sydney Rose, Walter E. Ruffin, Charles Carpenter, Sharn Chapman, David Hines, Brad E. Helfer were the original Plaintiffs in this case.

Equitably Toll the Statute of Limitations. (Doc. No. 22).   Subsequently, Roy Brandon,

Christopher Goins, Nathaniel Tilley, James Malone, and Sharn Chapman opted in as Plaintiffs in

this action.[2]  On February 2, 2010, the Court granted the parties' joint motion to stay, staying the

case for sixty days.   The Court lifted the stay and reactivated this case on April 15, 2010 (Doc.

No. 58).

The following facts give rise to the instant dispute.  Defendant Ourisman Chevrolet ("the

company") operates a car dealership in Marlow Heights, Maryland.  During the times giving rise

to this litigation, John Ourisman served as the President of Ourisman Chevrolet, and Abbas

Khademi served as the General Manager of Ourisman Chevrolet.   Defendant asserts that

Defendant Chris Ourisman, the management trainee at the company, has served as the Assistant

to the General Manager of Ourisman Chevrolet since December 2009.    Relevant to this suit is

the Pay Plan which the company uses to pay its employees.  Plaintiffs allege that the company

has violated the Fair Labor Standards Act by failing to pay Ourisman Chevrolet salespersons the

minimum wage for the hours that they worked under the Pay Plan at issue.

### a.   Defendant's Pay Plan

Defendants maintain that the Pay Plan under which the company pays its employees

follows a monthly pay period. (Doc. No. 90-1, at 3).   The Pay Plan states that:

> Each salesperson is guaranteed the minimum wage requirement for
> each hour worked each month; and at the end of each month the
> EMPLOYER will pay the amount due, if any, under the minimum
> wage requirement for the month, or the remaining amount of
> commissions and/or bonuses earned for the month whichever is
> greater.

---

[2] The Court awarded judgment in favor of Plaintiffs Looney and Malone on January 6, 2011, as these Plaintiffs
accepted offers of judgment from Defendant pursuant to Rule 68 of the Federal Rules of Civil Procedure. (Doc. No.
107).

*Id.* Employees' commission is dependent upon the number of vehicles sold by that employee within any given month. According to Defendants, the Pay Plan consists of five Professional Sales Levels ("Pro Levels"). The company determines commissions rates based on the Pro Level that an employee reaches by the end of the month. Moreover, employees are eligible to earn additional commission by selling customers service contracts and "aftermarket" accessory items for vehicles. Each week, employees are paid a twenty percent partial commission for sales that they make during the week. The company does not pay employees their full commission until the end of the month, after their Pro Level is determined. The company calculates an employee's Pro Level by totaling the number of sales made by the employee during a two month period. The company then pays employees an "end of the month settlement check" which includes compensation for any aftermarkets and service contracts that the employee has sold within the period. This end of the month settlement also includes additional commission for "Fast Starts," "Highest Gross Deals," "Volume Bonus," "Top Sales Person," and sales of "60-day units." Defendants contend that "[u]nder the Pay Plan, for purposes of determining the monthly commissions due, the sales for the current and proceeding month are totaled and averaged. Then, for the current month, to determine the monthly commission, the average monthly sales are used." (Doc. No. 90-1, at 6). Based on the nature of the Pay Plan that the company uses, an employee is unable to know how much commission he is entitled to until the end of the month, after the company makes its monthly calculations.

### b. Department of Labor Investigation

In 2005, the United States Department of Labor ("DOL") reviewed Defendants' payroll practices during an audit. The parties contest the scope of the DOL's audit, as Plaintiffs contest whether the DOL actually reviewed the Defendants' Pay Plan. According to Defendants, the

DOL found that other departments within the company had violated wage and hour laws, but the DOL did not find any FLSA violations with respect to how the company paid its sales employees. Additionally, Defendants maintain that the DOL failed to find any problems with the company's Pay Plan. Defendants posit that they continued to pay its sales employees in accordance with the terms of the Pay Plan based on the DOL's audit of their pay practices and subsequent failure to find any problems with their pay plan. (Doc. No. 90-1, at 7).

According to Plaintiffs, after the DOL investigated Ourisman Chevrolet in 2005, the DOL instituted a "Back Wage and Compliance and Payment Agreement" with the company. (Doc. No. 98, at 10). During the DOL audit of the company, the Office Manager, Teresa Byrd, was allegedly the point person for the audit, assisting and reviewing the required documents for Alberto Raymond, the DOL investigator. Plaintiffs assert that Defendants are not aware if Raymond specifically reviewed the Pay Plan during the audit. Moreover, Plaintiffs allege that minimum wage violations continued to occur even after the DOL's audit of the company.

### c. FLSA Violations

Plaintiffs allege that the Defendants do not follow their "minimum wage guarantee" and that they do not always calculate minimum wage each month. (Doc. No. 98, at 6). Plaintiffs allege that the company's payroll clerk, Carla Hampton, did not create any records when she performed minimum wage reconciliations. Moreover, Plaintiffs claim that when Defendants performed minimum wage reconciliations, "they admit that the numbers that they used were based on 'gross wage.'"(Doc. No. 98, at 7). Plaintiffs maintain that Defendants took several deductions out of employees' wages for such items as taxes, child support, garnishments, and accounts receivable (AR) deductions. Additionally, employees' wages were subject to "chargebacks" when customers purchased vehicles with no money down, promising to fulfill

their obligation to make a down payment in the future but never fulfilling their obligation. Furthermore, Plaintiffs posit that if a warranty allowed for a vehicle repair or if the sales manager made a decision to make a repair on a vehicle, the cost of the repair would be deducted from the salesperson's future earnings. By making these deductions, in addition to their other unlawful pay practices, Plaintiffs argue that Defendants failed to pay their salespersons a minimum wage under their weekly pay plan, contesting Defendants' argument that the company maintains a monthly pay plan and not a weekly pay plan.

## II.      MOTION FOR LEAVE TO AMEND

Plaintiffs have filed a Motion for Leave to File a Third Amended Complaint (Doc. No. 65). Plaintiffs contend that the most recent Scheduling Order that has been issued in the instant matter does not contain a deadline for amendment of the pleadings or address the issue of adding additional parties.[3] Plaintiffs are seeking leave to add John Ourisman, the President of Ourisman Chevrolet Co, Inc., to the Complaint. Plaintiffs contend that Ourisman "was (and still is) actively involved in wage/hour matters involving auto salespersons, and is allegedly responsible for failing to comply with FLSA." (Doc. No. 65-1, at 2). According to Plaintiffs, John Ourisman has been involved in the defense of this case and will not be caught by surprise were the court to grant the instant motion. Defendants oppose Plaintiffs' Motion on the grounds that it is untimely under the Scheduling Order, and Plaintiffs' have not shown good cause to amend their Complaint.

---

[3]   Plaintiffs assert that "[t]he deadlines established by the Initial Scheduling Order, (Doc. No. 11) were rendered obsolete when the Court granted Plaintiffs' Motion to Conditionally Certify a Collective Action and for approval of and facilitation of notice to potential class members on May 14, 2009. (Doc. No. 22). The period for opting-in to the collective action expired on September 12, 2009, and there are currently fourteen plaintiffs. By Order dated November 12, 2009, the Court amended the Scheduling Order on October 13, 2009. (Doc. No. 39). By Order dated February 2, 2010, the case was stayed for sixty days. (Doc. No. 52). By Orders dated April 15, 2010, the case was reactivated and the current Scheduling Order was issued. (Doc. Nos. 58 and 59). The last Scheduling Order did not contain a deadline for amendment of the pleadings or address the issue of adding additional parties." (Doc. No. 65-1, at 1).

Pursuant to the Second Amended Scheduling Order jointly proposed by the parties, discovery closed in this case on July 16, 2010. Plaintiffs have amended their Complaint twice in this matter. Moreover, the deadline in the October 13, 2009 Scheduling Order required the parties to amend their pleadings by November 15, 2009. (Doc. No. 39). The fact that the most current Scheduling Order (which the parties jointly proposed) fails to mention an amendment deadline does not provide support for Plaintiff's argument that good cause exists to amend the Complaint in this case. The Court believes that amending the Complaint at this late stage in the litigation would hinder the efficient adjudication of this case. Accordingly, the Court **DENIES** Plaintiffs' Motion for Leave to Amend.

### III.     MOTION FOR SANCTIONS

Pursuant to Federal Rule of Civil Procedure 30(b)(6) and 37(d), Plaintiffs move for sanctions against Defendants for seeking to introduce evidence in their Motion for Summary Judgment that is contrary to disposition testimony offered by John Ourisman, the Defendants' designated 30(b)(6) witness.

One issue of contention in this case is whether a two year statute of limitations applies to Plaintiffs' case or whether a three year statute of limitations which only pertains to willful FLSA violations is applicable to this case. Plaintiffs argue that "[n]otwithstanding the lack of testimony and other evidence, the Defendants have now moved for Summary Judgment on the issue of whether the 3 year statute of limitations applies, as well as a defense to liquidated damages." (Doc. No. 97, at 2). According to Plaintiffs, Defendants base their argument that a three year statute of limitations applies to this action by relying on an affidavit from Mr. Mohammed "Doc" Rashad, "which either contradicts or substantially elaborates on testimony that the 30 (b)(6) witnesses were unable to provide." *Id.*

Specifically, according to Defendants, during his deposition as a 30(b)(6) witness, John Ourisman failed to provide any detail regarding the DOL's investigation of Ourisman's payroll practices. Furthermore, Plaintiffs claim that Ourisman could not describe the extent of the DOL's investigation into the company's payroll practices. Plaintiffs contend that "[w]hile [Ourisman] maintained his claim that the Department of Labor did not find anything wrong, he agreed that the Department did not give its stamp of approval regarding wage payments to salespersons." (Doc. No. 97, at 8). As a basis for their motion for sanctions, Plaintiffs maintain that contrary to the deposition testimony given by Ourisman that demonstrated a lack of knowledge about the details of the DOL investigation, the Rashed affidavit (which Defendants supply in support of their Motion for Summary Judgment) makes statements which are directly contrary to Ourisman's testimony. Notably, Plaintiffs point to the fact that Rashed's affidavit "states that the Department of Labor reviewed payroll records, monthly settlement sheets, and other 'related payroll documents.'" (Doc. No. 97, at 13). Plaintiffs further allege that "Rashed paints a picture of an 'extensive examination' which involved interviews of sales employees." *Id.* at 13. Plaintiffs argue that this affidavit is clearly contrary to Ourisman's deposition testimony and should therefore be stricken.

Defendants respond to Plaintiffs' Motion by arguing that Rashed's affidavit does not contradict the statements made during the Rule (30)(b)(6) deposition. (Doc. No. 99, at 1). Moreover, Defendants state that "Rashed's affidavit . . . contained additional details regarding the DOL investigation, a fact that is unremarkable in light of John Ourisman's explicit acknowledgement during the deposition that Rashed was the Ourisman Chevrolet executive who had directly interacted with the investigator." (Doc. No. 99, at 4).

Plaintiffs direct the Court to *Rainey v. American Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998), which clearly articulates the mandates of Rule 30(b)(6). In *Rainey*, the court stated:

> Rule [30(b)(6)] states plainly that persons designated as corporate representatives 'shall testify as to matters known or reasonably available to the organization.' Fed. R. Civ. P. 30(b)(6). This makes clear that a designee is not simply testifying about matters within his or her own personal knowledge, but rather is 'speaking for the corporation' about matters to which the corporation has reasonable access. By commissioning the designee as the voice of the corporation, the Rule obligates a corporate party 'to prepare its designee to be able to give binding answers' in its behalf. Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition."

26 F. Supp. 2d at 94 (internal citations omitted).

The Court finds *Rainey* instructive to its determination in this case. The corporate designee in *Rainey* offered deposition testimony that he did not have sufficient knowledge about the amount of time that the plaintiff's spent on administrative work. Later, the Defendant offered affidavit testimony from a non-designated witness which gave a specific quantity of time that plaintiffs spent on administrative work. The court found the following:

> This quantitative assertion contrasts sharply with the positions taken by representatives Kirshner and Hoagland, each of whom failed to quantify the portion of plaintiff's duties that consisted of such putatively administrative work. Since the DOL regulations reserve the administrative exemption for employees whose primary duties consist of work directly related to management policies or business operations, the Kurtz affidavit's quantitative assertion works a substantial revision of defendant's legal and factual positions. This eleventh hour alternation is inconsistent with Rule 30(b)(6), and is precluded by it."

26 F. Supp. 2d at 94-95.

Like in *Rainey*, the testimony given in Rashed's affidavit appears to contravene the spirit of Rule 30(b)(6) by offering information that is different from the deposition testimony of John Ourisman, the 30(b)(6) witness. Defendants admit that "Mr. Rashed's affidavit provides additional details relating to the events of the DOL investigation that were not addressed by John Ourisman during his deposition." (Doc. No. 99, at 5). However, Defendants aver that the additional details offered in Rashed's affidavit are not inconsistent with Ouriman's deposition testimony and "are not central to the purpose for which Rashed's affidavit was offered, specifically that the DOL investigator's review of the Pay Plan did not result in a finding that the Pay Plan's methodology violated the FLSA or a recommendation to cease paying sales employees pursuant to the Pay Plan." *Id.* at 6. However, the Court does not agree.

From Ourisman's deposition testimony, it seems as though he does not have sufficient information to confirm whether the DOL ever actually reviewed the Pay Plan at issue in this case. Rashed's affidavit specifically alters the substance of Ourisan's deposition testimony, asserting that the DOL reviewed the Pay Plan, while Ourisan (the corporate designee) claimed not to have information regarding this topic. Noteworthy to the Court is Ourisman's testimony that he did not know whether the Pay Plan had even been endorsed or approved by the DOL. Furthermore, Ourisman did not know what details regarding the Pay Plan the DOL reviewed, stating, "I do not know if they specifically reviewed details or not." (Doc. No. 97-2).

As John Ourisman was the corporate designee pursuant to Rule 30(b)(6), he bound the corporation to the answers that he gave in his deposition testimony. Defendants have not indicated that the information regarding the DOL's investigation about which Ourisman was asked was inaccessible or unknown to the corporation at the time that Ourisman was deposed. Accordingly, Rule 30(b)(6) requires that the corporation be bound to the answers that Ourisman

gave during his deposition testimony and that the Defendants  be barred from using the Rashed

affidavit, as this affidavit provides information that materially varies from the information

provided in Ourisman's deposition.  Therefore, Plaintiff's Motion for Sanctions should be

**GRANTED**, and the Rashed Affidavit is stricken from the record (Doc. No. 97).

Pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, Plaintiffs move for

additional sanctions against Defendants on the grounds that there is no evidence to support

Defendant's claim that the DOL reviewed Ourisman's Pay Plan, as Defendants assert in their

Motion for Summary Judgment.  (Doc. No. 103, at 3).[4]   Plaintiffs allege that "this is not even

set forth in the affidavit submitted in contravention of Rule 30(b)(6)." *Id.*  Moreover, Plaintiffs

also aver that "Defendants' brief provides no citation to any evidence." *Id.*

However, Defendants contest Plaintiffs' characterization of the evidence that the

Defendants use to support their argument that the DOL actually reviewed their Pay Plan.

Defendants aver that "Plaintiffs have shown a total disregard for the state of the record, which in

fact contains explicit testimony from Ourisman Chevrolet's President affirming that the Pay Plan

was reviewed by the Department of Labor." (Doc. No. 105, at 3).  Defendants cite the following

excerpt from Ourisman's deposition testimony as support for this contention:

> Q: Mr. Ourisman, do you—do you know what the Department of Labor's review, or
> alleged review of this salespersons pay plan occurred?
> A: Well, it wasn't an alleged review, it was a review, and I believe it was in 2005.
> . . . .
>
> Q: Do you contend that your pay plan is based on an attorney's advice?
> A: No.  What I contend is that the 2005 Department of Labor review of our pay practices
> relative to salespeople found no issues, and that's what I'm contending.

---

[4] This motion is almost identical to the Plaintiffs' first motion for sanctions. However, the second motion for
sanctions is brought under Rule 11 of the Federal Rules of Civil Procedure, while the first motion argues that
Defendants have violated Rule 30(b)(6) and 37(d).   In their second Motion for Sanctions, Plaintiffs request that the
Court disallow the Rashed affidavit from remaining a part of the record, and impose sanctions for the defendants'
misrepresentation to the Court.  Plaintiffs suggest that the Court deny Defendant's Motion for Summary Judgment,
preclude Defendants from raising any defenses as to the issue of willfulness and award attorney's fees to the
Plaintiffs for prosecuting the Motion.

(Doc. No. 105, at 5).[5]

Plaintiffs appear to base the instant Motion on Defendant's affirmative statement that the DOL reviewed the company's *Pay Plan*, despite the fact that the deposition testimony and the affidavit from Rashed does not seem to support this statement. Defendants oppose Plaintiffs' motion on the grounds that John Ourisman's deposition testimony does allege that the DOL reviewed the company's Pay Plan, thus giving the defendants a factual basis on which to make their statement that the DOL reviewed the Pay Plan. Moreover, Defendants argue that the DOL reviewed the company's *pay practices* which were reflected in the Pay Plan. According to Defendants, the DOL's failure to find any problems with their pay practices provided them with a good faith basis to continue to compensate their employees consistent with the terms in the Pay Plan. However, the issue to decide for the instant motion is whether the Defendants' allegation that the DOL reviewed the company's specific *Pay Plan*, when there seems to be no factual evidence that the actual Pay Plan was reviewed, is worthy of Rule 11 sanctions.

Rule 11(b) of the Federal Rules of Civil Procedure provides as follows:

> (b) Representations to Court. By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous

---

[5] Plaintiffs direct the Court to Ourisman's deposition testimony that precedes the excerpt cited by Defendants, stating,
Q: What documents were reviewed by the Department of Labor?
A: I don't know. I only saw their concluding overview document.
(Doc. No. 106, at 2).

argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Having reviewed the evidence presented by both parties, it does not appear from the record that there is any factual support that the DOL reviewed the actual Pay Plan of the defendants.[6] The evidence in the record on which Defendants rely simply does not support Defendants' proposition that the DOL reviewed the Pay Plan. However, the evidence does indicate that the DOL may have reviewed the pay practices of Defendants. The Court acknowledges Defendants' argument that the DOL's review of the company's pay practices is offered to illuminate the issues of willfulness and good faith in the company's pay practices. ("Independent of whether the Pay Plan document itself was reviewed, there has been extensive testimony that Ourisman Chevrolet continued to compensate its sales employees in accordance with the terms of the Pay Plan based on the fact that the DOL did not find that its method of paying these employees was in violation of the FLSA." (Doc. No. 105, at 5)). The Court believes that Defendants' assertion that the DOL reviewed the Pay Plan itself could arguably be misleading. However, the factfinder will ultimately review the documents that the DOL reviewed, and determine its contents and whether the Pay Plan itself was actually reviewed. At

---

[6] Plaintiffs cite the deposition testimony of John Ourisman during his deposition in his individual capacity in which he stated:

Q: Do you know whether Investigator Raymond ever reviewed documentation relating to ---well, for instance, did he ever review your pay plan?
A: My pay plan. Please tell me what you're specifically referring to.
Q: Your January 1, 1999 pay plan for salespersons, which has been marked as Exhibit 2?
A: That's the pay plan for vehicle salespersons. I don't know. What I do know is that he didn't find any violations in regard to minimum wage based on monthly settlements for our salespeople.

(Doc. No. 106, at 5).

any rate, the Court does not feel that it is appropriate to impose sanctions on the Defendants as the Court is not convinced that Defendants have violated Rule 11.   Accordingly, Plaintiff's Motion for Sanctions pursuant to Rule 11(b) of the Federal Rules of Civil Procedure is **DENIED**.

### IV.     MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, Defendants ask the Court to (1) declare as a matter of law that Ourisman Chevrolet operated pursuant to a monthly plan; (2) dismiss Plaintiffs' claims in their entirety against Defendant Chris Ourisman; and (3) find as a matter of law that Defendants did not willfully violate the FLSA and that Plaintiffs' claims are governed by a two-year statute of limitations; and (4) find as a matter of law that no award of liquidated damages would be appropriate in the event any FLSA violation is established.

Plaintiffs move for partial summary judgment, requesting that (1) the Court hold that Defendants maintained a weekly pay plan; (2) the deductions taken from Plaintiffs' wages were invalid; (3) Defendants' violations of FLSA were willful; (4) Defendants Chris Ourisman and Abbas Khademi are "employers" under 20 U.S.C. § 203(d); and (5) Defendants are a covered enterprise pursuant to FLSA.

### a.  Standard of Review

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### i.  Monthly Pay Period

Plaintiffs argue that Ourisman Chevrolet failed to pay them a minimum wage as required by the FLSA.   Determining the pay period that Defendants utilized is critical to assessing whether Defendants paid Plaintiffs a minimum wage.   Both parties dispute the duration of Defendants' Pay Plan.   According to Defendants, the "Pay Plan expressly establishes a monthly settlement schedule pursuant to which sales employees are 'guaranteed the minimum wage requirement for each hour worked each month,' with the amount due to be paid 'at the end of each month.' Likewise, the commission system set forth in the Pay Plan operates on a monthly cycle.  The commissions rate applicable to a sale made by an employee is directly linked to the number of sales made by the employee over the course of the month in which the sale occurred, so the value of the employee's commission on any one sale cannot be determined until the end of the month." (Doc. No. 90-1, at 9).

On the other hand, Plaintiffs argue that they are entitled to summary judgment on the issue of whether Defendants used a monthly pay period.  Plaintiffs allege that Defendants used a

*weekly* pay period and that Plaintiffs were not paid a weekly minimum wage. The essence of

their argument is that Defendants took deductions from Plaintiffs' weekly pay checks,

demonstrating that the Pay Plan established a weekly pay period. As additional support for their

argument, Plaintiffs assert that "commissions are paid weekly, based on deliveries." (Doc. No.

98, at 19). Moreover, Plaintiffs contend that John Ourisman has testified that "nothing is

withheld from the weekly commission," thus supporting Plaintiffs' argument that the Pay Plan

establishes a weekly and not a monthly pay period. *Id.* According to Plaintiffs, "it is undisputed

that 100% of the commissions earned on a weekly basis were paid on a weekly basis . . . ." *Id.* at

21. Finally, Plaintiffs assert that "having chosen to pay full 100% commissions each week, and

to take full deductions from these weekly pay checks, the Defendants cannot establish as a matter

of law that there [sic] period is anything other than weekly." *Id.* at 23.

Defendants respond to Plaintiffs' contention that they use a weekly pay period by arguing

that "the commission on any given sale cannot be calculated until an employee's total sales

figures for the month are known. What the Plaintiffs allege to be irrelevant 'bonuses' are in fact

additional commission payments representing a portion of the gross profit on those vehicles sold

by the salespersons during a given month." (Doc No. 100, at 6).

Under the FLSA, "[e]very employer shall pay to each of his employees . . . who in any

workweek is engaged in commerce or in the production of goods for commerce . . . not less than

the minimum wage." 29 U.S.C. § 206(b) (2011). "The Act does not specify *when* this wage must

be paid." *Rogers v. City of Troy, N.Y.*,148 F.3d 52, 55 (2d Cir. 1998). However, the FLSA does

mandate that whatever pay period is established, the employer must pay employees a minimum

wage for all hours worked within that pay period. *See Olson v. Superior Pontiac-GMC, Inc*., 765

F.2d 1570, 1579 (11th Cir. 1985) ("the employee must *actually receive* the minimum wage each

pay period." (emphasis in original)). "Averaging good and bad weeks within the same pay period is unavoidable." *Marshal v. Allen-Russell Ford, Inc.* 488 F. Supp. 615, 618 (D.C. Tenn. 1980). To determine what a pay period consists of, one must look at the "actual pattern of payments adopted by the parties." *Luther v. Wilson*, 528 F. Supp. 1166, 1173-74 (S.D. Ohio 1981). Moreover, the Defendant has the burden of proving the duration of the pay period. *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985)

In *Olson*, the Eleventh Circuit distinguished its case from *Allen-Russell Ford* in which the court found that Allen-Russell Ford utilized a monthly pay period. The *Olson* court highlighted that unlike in its case, in *Allen-Russell Ford*, "the weekly paychecks were not considered regular payroll checks and no deductions were made from them." 765 F.2d at 1575. Furthermore, the *Olson* court held that *Olson* differed from *Allen-Russell* "due to the regularity of the weekly checks and the deductions from the checks of insurance, federal withholding and FICA." *Id.* Plaintiffs ask that this Court rely on *Olson* for its reasoning that Defendants in that case had not established that it used a monthly pay period.

Defendants assert that the instant case differs from *Olson* on the grounds that "unlike the commission procedure set forth in the Pay Plan, the plan adopted by the employer in [*Olson*] did not condition the commission rate applicable to a particular sale on the salesperson's total sales during a given month. Therefore, the commissions due to the employees in [*Olson*] for sales in a given week could be calculated at the end of that week." (Doc. No. 100, at 4). Defendants allege that in the present case, unlike in *Olson*, the Plaintiffs' commissions were dependent upon their monthly sales, and accordingly, total commissions could not be known until the end of the month. Furthermore, Defendants argue that the instant case differs from *Olson* because unlike in *Olson* where the court found that monthly settlements did not occur, in this case, Defendants

do in fact use regular monthly settlements.    Defendants argue that the instant case is analogous to *Allen-Russell Ford* where the Court upheld the magistrate Court's findings that the defendant car dealership's commission plan which used a "60-40% pay plan" or "80-20% pay plan" was a monthly pay period.    In *Allen-Russell Ford*, the court found that despite the irregularity of the defendant's pay practices, the defendant utilized a monthly pay period because "the payday for all weeks in a calendar month came once a month, at the end of the month." 488 F. Supp. at 615.

The duration of Defendant's Pay Plan is a complicated issue which warrants further explanation during trial.  At this stage in the litigation, there is a material dispute concerning Ourisman's Pay Plan.  Despite Defendants' arguments that a monthly pay period is specifically enacted in its Pay Plan, there is a genuine dispute of material fact as to whether the Defendant followed a monthly or a weekly pay period.    While Defendants maintain that total commissions on each sale cannot be determined until the conclusion of the month in which the sale occurs, Plaintiffs' argument that they received all of their commissions when they were earned on a weekly basis and that deductions were taken from this weekly payment create a genuine dispute of material fact regarding the type of Pay Plan that Defendants used.    Therefore, summary judgment is **DENIED** on this issue.

## ii.  Business Expenses and Business Losses' Effect on Minimum Wage

The parties dispute whether the minimum wage calculation can include business expenses and losses ("AR Deductions") recouped by Ourisman in the form of wage deductions. Plaintiffs contend that the Defendants' calculation of the minimum wage based on gross earnings improperly fails to consider business losses and expenses that constitute impermissible deductions.  Plaintiffs request partial summary judgment, asking the Court to declare that all AR deductions for hold notes, customer payoffs, cash shortages, sales licenses, and warranty work

on used car purchases, deductibles on cars damaged by salesperson, work shirts, and the year end bonus savings plan are deductions which may not reduce a salesperson's weekly pay below the statutory minimum wage. [7]

Defendants assert that this issue is not ripe for decision based on Judge Schulze's August 2010 Order reserving discovery and motions on all payroll deduction issues until after the Court's decision on the parties' cross motions for Summary Judgment. (Doc. No. 100, at 15). In Judge Schulze's August 2, 2010 Order, she bifurcated discovery, allowing Plaintiffs to produce their expert report regarding damages at the conclusion of summary judgment. In Judge Schultz's August 30, 2009 Order, she ordered that the Defendants produce source documents for all AR deductions for which they intended to claim salary credit and that these documents be produced no later than 30 days after the court rules on the pending summary judgment motions in this case. (Doc. No. 89). Defendants argue that "the issue of which deductions could or could not be taken from amounts due under the FLSA's minimum wage requirements is not ripe for decision, as the types of deductions which were actually made from Plaintiffs' wages, and those upon which Defendants intend to rely in defending Plaintiffs' claims, will not be clear until the payroll deduction documents are produced and reviewed at the time set by the August 30, 2010 Order." (Doc. No. 100, at 17).

Reviewing the record, specifically Judge Schulze's orders regarding bifurcation of discovery, it appears as though the issue of which deductions were permissible is not a ripe issue for discussion at this juncture. This issue is more appropriate to be determined after the parties have conducted discovery and exchanged documents on AR payroll deductions. Pursuant to Judge Schultz's Order, these documents will not be exchanged until after the Court rules on the instant motions for summary judgment. Plaintiffs' request that the Court at least rule on which

deductions are permissible and which ones are not permissible and whether the defendant has the burden of itemizing invalid deductions from valid deductions. (Doc. No. 102, at 18). However, because the AR records are not required to be exchanged until after the Court rules on the pending summary judgment motions, it would be prejudicial to rule on the issues that Plaintiffs request without giving the Defendants the proper opportunity to brief these issues. Defendants did not appear to brief this issue, as they were relying on the fact that this issue would not be argued until after the Court ruled on the summary judgment motions at bar. Accordingly, the Court will **DENY** summary judgment to Plaintiffs on the permissibility of certain AR deductions.

### iii. Employer Status of Chris Ourisman, Ourisman Chevrolet, and Defendant Khademi

Defendants contend that Chris Ourisman is not an employer of the Defendants, "as Chris Ourisman has at no time exercised any authority with regard to Ourisman Chevrolet's payroll practices." *Id.* at 12. Pursuant to 29 U.S.C. § 203(d), an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2011). "The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.' The touchstone is the 'economic reality' of the relationship." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Id.* Defendants direct the Court to *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 696 (E.D.N.C. 2009), for its recent articulation of the four factored test used in determining the extent of an individual's control over

employees.   In *Garcia*, the Court stated that the court should assess the following factors to determine individual liability under FLSA, looking at whether the individual,

(1) Had the power to hire and the employees;
(2) Supervised and controlled employee work schedules or conditions of employment;
(3) Determined the rate and method of payment; and
(4) Maintained employment records.

Defendants maintain that Chris Ourisman is not an employer under FLSA, as he is currently the assistant to Ourisman Chevrolet's General Manager, and "his role continues to be centered on learning how to manage the dealership, rather than on performing any specific managerial or supervisory function. " (Doc. No. 90-1, at 13).   Contrary to Defendants' assertions that Chris Ourisman is the Assistant Manager of the Company, Plaintiffs posit that Chris Ourisman "holds himself out to others as being a Vice President and signs documents as Vice President." (Doc. No. 98, at 39).   Moreover, Plaintiffs allege Chris Ourisman should be subjected to individual liability under FLSA because he "exercised managerial responsibilities and had substantial control over the employment of other employees, including at least one management employee who took directions from him."  *Id.* at 40.

Plaintiffs point to several examples of how Chris Ourisman allegedly had the power to control the employment of other employees at the company.  For example, Plaintiffs highlight the fact that the office manager of the company "testified that if Chris Ourisman instructed her to do something, she would 'definitely do it.'" (Doc. No. 98, at 40).   Plaintiffs also point to the fact that Chris Ourisman was given "demo" cars to drive.  Finally, and what the Court finds most important, Plaintiffs allege that Chris Ourisman controlled the work of salespersons.   Plaintiffs allege that "Chris Ourisman admit[ed] that he was involved in reprimanding and disciplining salespersons, and directing them in their work." *Id.* at 41.  Additionally, Plaintiffs posit that Chris Ourisman "terminated at least one salesperson 'on the spot' after the salesperson let a customer

take an automobile out on a test drive alone." *Id.*  Plaintiffs argue that "Chris Ourisman signed timesheets of salespersons." *Id.*  Finally, Plaintiffs argue that Chris Ourisman "possesses all of the indicia of upper management as he both admits that salespeople have come to him and complained about wage issues and that he is in a position to make employment policy recommendation[s] to his Father [sic], John Ourisman, including such things as installing a time clock system to track salesperson hours." *Id.*

Given the factual conflicting allegations presented by the parties, the Court deems that there is a genuine dispute of material fact as to whether Chris Ourisman is an employer under FLSA.  Accordingly, summary judgment should be **DENIED** as to both parties.

Next, Plaintiffs move for Summary Judgment on the issue of whether Ourisman Chevrolet is a covered enterprise under FLSA.  Plaintiffs highlight Defendants' stipulation that "for all times relevant to the complaint filed in this matter, Defendant Ourisman Chevrolet Co., Inc. was an enterprise engaged in commerce or the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1)(A)." (Doc. No. 98, at 44).  Defendants do not appear to oppose Plaintiffs' argument that they are a covered enterprise under FLSA.  Therefore, summary judgment should be **GRANTED** as to Plaintiffs on this issue.

Plaintiffs also point out that Defendants have stipulated that "Abbas Khademi is an employer for the purposes of 29 U.S.C. § 203(d)." *Id.* at 45.  As such, Plaintiffs move for summary judgment on the issue of whether Defendant Khademi is an employer under FLSA. Defendants have presented no opposition to Plaintiffs' arguments that Defendant Khademi is an employer under FLSA.  Accordingly, summary judgment should **GRANTED** as to Defendants on the issue of Defendant Khademi being an employer under FLSA.

#### iv. Willfulness of Ourisman Chevrolet's Violations

Defendants contend that the undisputed facts of this case demonstrate that Ourisman Chevrolet did not willfully violate the minimum wage provisions of the FLSA. ("Indeed, Ourisman Chevrolet's continued use of its Pay Plan was based on the results of a 2005 audit by the United States Department of Labor, which found that Ourisman's pay practices regarding its sales staff complied with the law." (Doc. No. 90-1, at 15)). As Defendants claim that their acts were not willful under FLSA, they believe that Plaintiffs' claims are governed by FLSA's two year limitations period. *Id.* Defendants direct the Court to Fourth Circuit precedent, *Chao v. Self Pride, Inc.*, 232 Fed. Appx. 280, 287 (4th Cir. 2007), for its articulation of the FLSA "willfulness" standard. Referencing the Supreme Court's interpretation of "willfulness" in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135 n.13 (1988), the Court noted that willfulness could only be found if "(1) the defendant is reckless or deliberate with regard to whether its conduct complied with known provisions of the FLSA, or (2) the defendant is reckless or deliberate with regard to determining its obligations under the FLSA." *Id.* at 287. The Court went onto note that "In *Richland Shoe*, the Supreme Court rejected a circuit court doctrine that held conduct willful whenever the FLSA 'was in the picture,' instructing us to look for an actually malignant—not merely careless—mental state." *Id.* (citing *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir. 1971)) (internal citations omitted). The court in *Williams v. Maryland Office Relocators*, 485 F.Supp. 616, 621 (D. Md. 2007) held that a court can also find willfulness if there is "evidence of a scheme by the employer to cover-up FLSA violations."

Plaintiffs argue that there is sufficient evidence to demonstrate a willful violation of FLSA, arguing that "there are timesheets that are missing and not accounted for, and Defendants' Office Manager, Ms. Teresa Boyd, has admitted that she knows of instances where salespersons

may have worked but there might not be a corresponding timesheet." (Doc. No. 98, at 31).

Also, Plaintiffs assert that "it is undisputed that the practice at Ourisman included recklessly failing to critically review and total timesheets." *Id.*   Plaintiffs present examples of timesheet manipulation to the Court, as well.   For instance, Plaintiffs allege one employee was forced to underreport his actual hours of work.   Defendants respond to these allegations by asserting that "the dealership did not direct employees to underreport their time."  (Doc. No. 100, at 13).

In light of the conflicting evidence presented regarding whether the company endorsed timesheet manipulation and underreporting, at this juncture, the Court cannot grant summary judgment on the willfulness issue to either party.   The Court declines to assess the parties' other arguments regarding willfulness in light of this finding.  Accordingly, summary judgment is **DENIED** to both parties on the issue of willfulness.

### v.   Liquidated Damages

Pursuant to 29 U.S.C. § 260, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C.A. § 260 (West 2011).   Defendants move for summary judgment on the issue of whether Plaintiffs are entitled to an award of liquidated damages, as they argue that they "have introduced evidence that the basis for Ourisman Chevrolet's use of the Pay Plan during the time period encompassed by Plaintiffs' claims was that the DOL gave no indication following the 2005 audit that the compensation system established by the Pay Plan was not permissible under FLSA."

Based on the Court's reasoning on whether Defendants willfully violated FLSA, at this juncture, the Court cannot grant summary judgment to either party on the issue of whether Plaintiffs are entitled to liquidated damages based on their good faith compliance with FLSA. There is sufficient evidence in dispute on the issue of whether Defendants acted in good faith, and accordingly, summary judgment is **DENIED** as to both parties on this issue.

### vi. Plaintiffs' Motion for Attorney's Fees and Costs

This Court entered a Rule 68 Offer of Judgment against Defendants on January 6, 2011. Two of the twelve plaintiffs, William Looney ("Looney") and James Malone ("Malone") accepted the offers of judgment on September 29, 2010. (Doc. No. 108, at 2). Plaintiff Looney was awarded a judgment for $2,500.00, and Plaintiff Malone was awarded a judgment for $600.00. *Id.* Plaintiffs, by their attorneys, move for an Order of Attorney's Fees and Costs pursuant to 29 U.S.C. § 216(b). Given that the claims of the other ten plaintiffs are still pending and not covered by this motion, Plaintiffs' attorneys move for one-sixth of attorneys' fees plus pre-judgment interest accrued as of September 29, 2010 when Defendants made the offer to Looney and Malone, totaling $53,064.63.[8] In addition, Plaintiffs' attorneys request the total

---

[8] This amount also includes post-offer work completed by attorneys on behalf of Plaintiffs Looney and Malone. However, in reviewing exhibits 1, 2, and 2a (attached to Doc. No. 108), it appears as though Plaintiffs' attorneys calculated 1/6 of the total attorneys' fees for work completed as of September 29, 2010 (pre-offer), even though some entries clearly indicate that the attorneys completed some of those hours on behalf of a non-prevailing plaintiff. The Court has said that "there will be no recovery for fees spent on case development for non-prevailing Plaintiffs." *Almendarez v. J.T.T. Enterprises Corp.*, No. JKS 06-68, 2010 WL 3385362, at *4 (D. Md. Aug. 25, 2010). However, the court in *Almendarez* found that three prevailing Plaintiffs out of eight total plaintiffs were entitled to fee awards because "much of the time spent on . . . litigation is inseparable as to individual Plaintiffs: for example, drafting documents such as the complaint, discovery requests, and motions; researching legal issues and reviewing discovery received from Defendants; preparing trial materials and the trial itself . . . ." *Id.* at *3 (internal quotation marks omitted). "Therefore, fees for that time can be attributed to the prevailing Plaintiffs without unjustly rewarding the non-prevailing Plaintiffs." *Id.* Any portion that was "clearly spent exclusively for non-prevailing plaintiffs" such as "preparing responses to Defendants' discovery requests, conferring with individual [p]laintiffs, reviewing time records, and attending depositions, will not be fully counted." *Id.*

costs and expenses in the amount of $12,578.65 for a grand total of $65,643.28.  (Doc. No. 111, at 21).

Under the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs of action."  29 U.S.C. § 216(b).  The payment of attorney's fees and costs to employees who prevail on FLSA claims is mandatory.  "The amount of the attorney's fees, however, is within the sound discretion of the trial court."  *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984); *see also Almendarez v. J.T.T. Enters. Corp.*, No. JKS 06-68, 2010 WL 3385362, at *1 (D. Md. Aug. 25, 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  "To recover attorney's fees and costs, a plaintiff must be a prevailing party, a threshold question for which the Court accords a generous formulation."  *Almendarez*, 2010 WL 3385362, at *1 (quoting *Hensley*, 461 U.S. at 433) (internal quotation marks omitted).  "A plaintiff is a prevailing party for the purpose of attorney's fees if the plaintiff succeeds on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit."  *Id.* (internal quotation marks omitted).

In awarding attorney's fees under the FLSA, the court should determine the lodestar amount, which is "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  To determine the reasonableness of the number of hours and the hourly rate, the court further considers the factors outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), and endorsed by the Supreme Court in *Hensley*.  *See Hensley*, 461 U.S. at 430 n.3; *see also Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting *Johnson* factors).  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

> fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Johnson*, 499 F.2d at 717-19; *Hensley*, 461 U.S. at 430 n.3). "After deducting any fees that resulted from time spent on unsuccessful claims, the court evaluates the degree of success enjoyed by the plaintiff and arrives at a final reasonable fee." *Jackson v. Estelle Place LLC*, No. 1:08cv984 (LMB/TRJ), 2009 WL 1321506, at *3 n.1 (E.D. Va. May 8, 2009).

Defendants make five arguments in opposition to Plaintiffs' calculation of attorneys' fees and costs. First, Defendants argue that the fee amount is excessive on its face " in light of the fact that judgment in favor of Looney and Malone was entered pursuant to offers of judgment made prior to the completion of discovery or the filing of dispositive motions." (Doc. No. 110, at 1, 3) Second, Defendants argue that Plaintiffs' attorneys' billing records have duplicative time entries. *Id.* at 1. Third, Defendants attack the hourly rates claimed by Plaintiffs' counsel. *Id.* at 6. Fourth, Defendants assert that the fee amount is "entirely disproportionate to the amounts recovered by Looney and Malone relative to the amounts claimed." *Id.* at 1. Lastly, Defendants object to paying total costs of the litigation up to the date of the offer. *Id.* at 8. The Court addresses Defendants' arguments and the *Johnson* factors *seriatim*.

## 1. Time and Labor Required

Plaintiffs' attorneys Warbasse and Hoffman work in separate legal practices. Attorney Warbasse charges $400.00 per hour, and he has asserted that he is an employment law attorney with over twenty-five years of experience. (Doc. No. 108-1, at 1). Attorney Hoffman charges $300.00 per hour and asserts that he has been a practicing lawyer since 1999 and has litigated a

number of employment cases including FLSA cases. After voluntary reductions, Attorney Warbasse requests fees for 244.8 hours of time expended plus pre-judgment interest, while Attorney Hoffman requests fees for 288.6 hours of time expended plus pre-judgment interest. The Court is inclined to agree that the hourly rates are reasonable, based on similar cases and the affidavits submitted on behalf of these attorneys to show these are the specific market rates in the community.

"The court must . . . delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of billing judgment." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175 (internal quotations omitted); *see also Hensley v. Eckerhart*, 461 U.S. at 433-34. In *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986), the attorneys requested compensation for 37.9 hours spent in preparing and arguing the petition for fees. The Fourth Circuit upheld the District Court of Eastern Virginia finding that "the hours requested were totally unreasonable, particularly in light of the facts that there was no dispute as to the attorney's entitlement to fees, and the attorneys and the court were thoroughly familiar with the case." *Id.* (internal quotation marks omitted).

In this case, it appears that the amount of attorney's fees is disputed, but neither party disputes that Plaintiffs' attorneys are entitled to fees. First, Defendants attack the time and labor required given the experience of Plaintiffs' attorneys, the novelty and difficulty of the questions and the fact that discovery had not commenced at the time when Defendants made the offers of judgment to Looney and Malone. (Doc. No. 110, at 4). Plaintiffs reply that this case has been active since 2008 and that "this case has required Plaintiffs to file, oppose, and reply to numerous motions and other papers filed with the Court." (Doc. No. 111, at 2). Defendants also specifically point to the time spent of roughly forty-five hours on preparation of Plaintiffs'

instant Motion for Attorneys' Fees and the compilation of counsels' records. (Doc. No. 110, at 5). Indeed, Warbasse asserts that he spent 19.4 hours drafting the motion while Hoffman contends he spent 27.7 hours drafting the motion. (Doc. Nos. 107-1 and 107-2a). Plaintiffs' attorneys should be familiar with the case as the case has been ongoing since 2008 and crediting both attorneys' extensive experience, roughly forty-five hours seems excessive for the prosecution of the Motion for Attorney's Fees. Therefore, this Court will adjust the amount Plaintiffs are requesting accordingly.

### 2. Duplicative Fees

Next Defendants attack the time logs as duplicative. Indeed, there are a number of entries in which both Warbasse and Hoffman have entered for multiple telephone conferences between Plaintiffs' counsel. "Redundant hours generally occur where more than one attorney represents a client." *Almendarez*, 2010 WL 3385362, at *5 (quoting *Norman v. Hous. Auth. Of Montgomery*, 836 F.2d 1292, 1301-02 (11th Cir. 1988)). In *Almendarez*, the court stated that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* (citations omitted). Moreover, "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Id.* (quoting *ACLU v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999)).

The question of whether two attorneys who are not in the same firm can bill for telephone conferences between themselves specifically has not been addressed in the Fourth Circuit. However, the *Court's Rules and Guidelines for Determining Attorney's Fees* leaves open the possibility for two attorneys to be compensated when work includes "periodic conferences of

defined duration held for the purpose of work organization, strategy and delegation of tasks." *See* Loc. R. App. B(d) (D. Md. July 2001) ("Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases"). Thus, for this type of work, this Court is not required to impose a downward adjustment for calls which both attorneys billed, when the calls concerned organizing, strategizing, and delegating.[9]

However, duplicative billing is not allowed for substantive work. The "district court [is] in the best position to determine whether the efforts of the two attorneys were duplicative." *Daly*, 790 F.2d at 1080. "[A] reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work." *Barnes*, 168 F.3d at 432. "[P]roperly exercised billing judgment includes reductions in hours billed for attorneys of lesser skill and experience." *Spell*, 852 F.2d 762, 771 (4th Cir. 1988) (citing *Hensley*, 461 U.S. at 434).

Both attorneys' billing records assert that each lawyer drafted the instant Motion for Attorney's Fees. Upon review of these records, each attorney for Plaintiffs researched a specific issue within the instant motion (specifically, Warbasse researched "Fees" while Hoffman researched Rule 68—Offers of Judgment and Attorneys' Costs). (Doc. Nos. 108-1, at 8 and 108-2a, at 1). However, Warbasse also entered a log on 12/16/2010 that indicates he also researched Rule 68. (Doc. No. 108-1 at 8). While Plaintiffs' attorneys are in individual practices, and the local rules allow both attorneys to charge for multiple telephone conferences in order to delegate substantive work between their offices, there should not be any substantive entries in the billing logs where both attorneys researched the exact same issue. Therefore, the Court will only award

---

[9] *But see Essex v. Randall*, No. Civ. A. DKC20033276, 2006 WL 83424, at *4 (D. Md. Jan. 11, 2006) (noting that the court will deduct overlapping time entries and, in accordance with the local rules, grant fees only for the time spent by the attorney billing at the higher rate when time entries in question are not sufficiently detailed for the court to determine the meeting's purpose ("Conference with K. Doolittle re: Randall complaint").

Warbasse's fee for the time spent on researching Rule 68 Offers of Judgment, and the Court will deduct the time on Hoffman's log by $630.00.

### 3. Customary Hourly Rates

Defendants also attack the customary fee and contend Plaintiffs have not submitted evidence to support the hourly rates of their attorneys. However, this argument is unpersuasive. "The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel* 824 F.2d 1380, 1402 (4th Cir. 1987) (citing *Nat'l Assoc. of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325-26 (D.C. Cir. 1982)). Plaintiffs' attorneys have submitted their affidavits and a sworn affidavit by Julie Janofsky Esq., which produced specific evidence of the prevailing market rates in the relevant community, which are consistent with Plaintiffs' rates. Accordingly, the Court finds that Plaintiffs' attorneys' customary hourly rates are appropriate.

### 4. Results Obtained v. Amounts Sought

Next, Defendants request a downward adjustment when analyzing the extent of Plaintiffs Looney and Malone's success. The argument that the amount awarded is disproportionate to the amount expected is compelling. Defendants note that Plaintiffs Looney and Malone each brought claims, seeking damages in the amounts of $5,291.91 but only recovered less than fifty percent and fifteen percent respectively. (Doc. No. 110, at 8).

The Fourth Circuit considers the amount of a judgment relative to the fee amount claimed. Accordingly, the Court must determine "whether the expenditure of counsel's time was

reasonable in relation to the success achieved." *Almendarez*, 2010 WL 3385362, at *7.

"Because the degree of success obtained by the plaintiff is the most critical factor in determining

the reasonableness of a fee award, the district court may simply reduce the award to account for

the limited success." *Hensley*, 461 U.S. at 436-37 (internal quotation marks omitted). With this

in mind, it is important to note that the Court does not "reflexively reduce fee awards whenever

damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall." *Nigh v.*

*Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007). However, "[i]n considering

the degree of success, the result is what matters." *Hensley*, 461 U.S. at 435-36 ("If, on the other

hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably

expended on the litigation as a whole times a reasonable hourly rate may be an excessive

amount.").

When considering the extent of the relief obtained, the District Court for the District of

Maryland and the Fourth Circuit imposed a twenty-five percent deduction for FLSA cases where

the court considered the successful claims to the requested attorneys' fees and "compare[d] the

amount of the damages sought to the amount awarded." *Jackson v. Estelle's Place LLC*, 391 F.

App'x 239, 245 (4th Cir. 2010) (quoting *Mercer v. Duke Univ.* (citations omitted)); *see also*

*Almendarez*, 2010 WL 3385362, at *7. In *Jackson*, "only six plaintiffs joined the lawsuit, and

their total recovery amounted to less than $10,000.00 before it was doubled under FLSA's

liquidated damage provision." 391 F. App'x at 241. In addition to noting the "modest value" of

the amount, the court focused on the amount of successful claims compared to the unsuccessful

claims and imposed a twenty-five percent downward adjustment. *Id.* The Fourth Circuit upheld

the district court's findings, noting that the amount the attorneys sought for unnecessary work

was unreasonable because nine out of the thirteen forms of relief sought in the complaint "were not successfully prosecuted." *Id.* at 241, 243.

In *Almendarez*, the court considered the plaintiffs' request of $169,049.50 in attorneys' fees after only three of eight plaintiffs recovered judgments in the total amount of $3,300.00. *Almendarez*, 2010 WL 3385362, at *1. The court found that the "[p]laintiffs' awards were so low in relation to what they sought as to render their victory close to purely technical . . . . Nevertheless, Plaintiffs obtained liquidated damages, and the case served important interests of the FLSA." *Id.* at *7. After calculating the lodestar amount of $112,077.50, the court then reduced that amount by twenty-five percent for a total of $84,058.00.

In this case, Plaintiffs brought a single FLSA claim. Nevertheless, like *Almendarez*, Plaintiffs only obtained a marginal amount of the damages sought.[10] Therefore, given the success of two of fourteen plaintiffs, the Court awards the proportional amount of one-seventh of Plaintiffs' attorney's fees plus pre-judgment interest, instead of the requested one-sixth. In regards to the single FLSA claim and the nominal amounts recovered, this Court will follow similar cases and further impose a downward adjustment of twenty-five percent. Including the deductions for duplicative billing entries mentioned above, the Court awards Plaintiffs a total of $37,292.52 in attorney's fees.[11]

### 5. Analysis on the Awarding of Full Costs and Expenses

---

[10] Plaintiffs Nathaniel Tilley and Christopher Goins withdrew from the case on July 29, 2010. Even though the record reflects that twelve plaintiffs existed at the time Defendants presented the offers of judgment on September 20, 2010, Plaintiffs' attorneys spent the majority of their hours working for all fourteen plaintiffs.

[11] "[A]cross-the-board reductions are appropriate when billing records are voluminous and numerous billing entries are in dispute." *See Kahlil v. Original Old Homestead Restaurant, Inc*., 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (internal quotation marks omitted)). The amount above is inclusive of all pre-judgment and post-judgment fees and pre-judgment interest. Additionally, the Court has awarded the full amount of $5,490.00 for the 18.3 hours preparing of the 22 page Reply Brief to the Defense's Opposition brief.

The District Court has the discretion to determine taxable costs against losing defendants in FLSA cases. *Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 549 (4th Cir. 1998). "[T]he costs that may be charged to losing defendants include those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Lopez v. Lawns 'R' Us*, 2008 WL 2227353, at *7 (D. Md. May 23, 2008) (citing *Spell*, 852 F.2d at 771 (citations omitted) (internal quotation marks omitted)). "Examples of types of costs that have been charged to losing defendants include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Vaughns v. Bd. of Educ. of Prince George's County,* 598 F. Supp. 1262, 1289-90 (D. Md. 1984).

As the Court discussed during the hearing on this matter, it would be premature to award any costs to Plaintiffs, given that only two plaintiffs accepted these offers of judgment and litigation in this case is ongoing. This court recognizes that Plaintiffs' attorneys should be awarded some costs for the prevailing plaintiffs, and those costs will be determined at the conclusion of this litigation.

Therefore, the Court **GRANTS-in-PART** and **DENIES-in-PART** Plaintiffs' Motion for Attorney's Fees, with the result that the Court awards $37,292.52 to Plaintiffs in attorney's fees, and the Court will defer awarding any costs to Plaintiffs until the conclusion of this litigation.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Leave to File a Third Amended Complaint is **DENIED** (Doc. No. 65). Additionally Defendant Ourisman Chevrolet Company, Inc., Abbas Khademi, and Chris Ourisman's Motion for Summary Judgment (Doc. No. 90) is **DENIED**. Plaintiffs' Cross Motion for Partial Summary Judgment. (Doc. No. 98) is

**GRANTED in-PART and DENIED-in-PART**, with the result that Ourisman Chevrolet is deemed a covered enterprise under the FLSA, and Defendant Abbas Khademi is deemed an employer for the purposes of the FLSA. Summary Judgment is denied as to all other issues in Plaintiffs' partial motion for summary judgment. Plaintiffs' Motions for Sanctions (Doc. No. 97) is **GRANTED**, with the result that the affidavit of Mohammed Rashed is stricken from the record. Plaintiffs' Motion for Sanctions pursuant to Rule 11 (Doc. No.103) is **DENIED.** Finally**,** Plaintiffs' Motion for Attorney's Fees and Costs (Doc. No. 108) is **GRANTED-in-PART and DENIED-in-PART**, with the result that the Court will award attorney's fees to Plaintiffs in the amount of $37,292.52, but the Court will defer awarding costs until the conclusion of this litigation. A separate Order will follow.

Date: <u>July 1, 2011</u>                             <u>            /s/            </u>
                                                        Alexander Williams, Jr.
                                                        United States District Judge